UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETE CANNON,

        Petitioner,

v.                                                          CASE NO. 04-CV-72447-DT
                                                            HONORABLE ARTHUR J. TARNOW

BLAINE LAFLER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S
APPLICATION FOR THE WRIT OF HABEAS CORPUS**

This matter is pending before the Court on petitioner Pete Cannon's *pro se* application

for the writ of habeas corpus under 28 U.S.C. § 2254.  Respondent opposes the habeas petition

on the grounds that Petitioner's claims are procedurally defaulted, without merit, or not

cognizable on habeas review.  The Court has concluded for reasons given below that the habeas

petition must be denied.

**I.  Background**

On December 20, 2000, a circuit court jury in Saginaw County, Michigan found

Petitioner guilty, as charged, of the following counts:

    1.      possession with intent to deliver less than fifty grams of cocaine;

    2.      conspiracy to possess with intent to deliver less than fifty grams of cocaine;

    3.      maintaining a drug house;

    4.      possession with intent to deliver less than fifty grams of cocaine;

    5.      possession of a firearm during the commission of a felony; and

    6.      possession of marijuana.

*Cannon*, No. 04-CV-72447-DT

The first three convictions arose from evidence found during a search of a house at 124

North Fifth Street in Saginaw, Michigan, and the latter three convictions resulted from evidence

found at 1712 Boxwood Street in Saginaw.  The North Fifth Street house was raided

> [a]fter a controlled buy at the house . . . .  The police found suspected cocaine and
> related paraphernalia in one room, three people in another room, a fourth person
> in one bedroom, and [Petitioner] in another bedroom.  [Petitioner] had in his
> pockets a Veterans Administration card with his name and the Boxwood address
> on it, a pager, and a Consumer's Energy bill for the North Fifth house in the name
> of Dameka Woods, [Petitioner's] daughter.  Woods testified that she owned the
> house, and it was supposed to be vacant. The police then raided the Boxwood
> property.  There they found a jar containing a large cake-like quantity of cocaine
> in the garage, a handgun, a rifle, a shotgun, nearly $3,000 in cash, and suspected
> marijuana in the master bedroom of the house.  They also found a tax bill for the
> North Fifth house addressed to Dameka Woods, a Consumer's Energy bill for the
> North Fifth house addressed to Pete Woods,[1] a cable television bill addressed to
> [Petitioner] at the Boxwood house, and a photograph of [Petitioner] and his
> girlfriend, Janice Coleman.  Coleman was the only person there; she said she was
> there washing clothes. At the North Fifth house only [Petitioner] and Jacqueline
> Bowdery[2]  were arrested and charged.

*People v. Cannon*, No. 232529, 2003 WL 21752819, at *3 (Mich. Ct. App. July 29, 2003)

(footnotes in original).

The prosecutor's theory was that Petitioner had been managing a drug business and that

he used the North Fifth Street house as his sales location and the Boxwood Street location as his

warehouse.  Petitioner did not testify at his trial, and he denied all the charges against him.

There was evidence that his daughter owned the North Fifth Street house and that someone by

the name of Johnny Hines owned the Boxwood Street house.  Petitioner's explanation for being

---

[1]  The police testified that both [Petitioner] and his son, Pete, Jr., went by the last name of Woods.

[2]  Bowdery was given a favorable plea agreement and testified for the prosecution.

*Cannon*, No. 04-CV-72447-DT

present when the police raided the Fifth Street house was that his daughter had called him there

to evict some people who were not authorized to be there.

The trial court sentenced Petitioner to imprisonment for two and a half to twenty years

for each of the cocaine and conspiracy convictions, sixteen to forty-eight months for maintaining

a drug house, two years for the felony firearm conviction, and fifteen to twenty-four months for

the marijuana conviction. In an appeal of right, Petitioner challenged the sufficiency of the

evidence to support his convictions and the propriety of rebuttal testimony. The Michigan Court

of Appeals affirmed the three convictions related to the North Fifth Street house, but vacated the

three convictions related to the Boxwood Street house for lack of sufficient evidence. *See*

*People v. Cannon*, No. 232529, 2002 WL 31187868 (Mich. Ct. App. Oct. 1, 2002).


Petitioner appealed the North Fifth Street convictions, and the State appealed the

dismissal of the Boxwood Street convictions. The Michigan Supreme Court denied Petitioner's

application for leave to appeal, *see People v. Cannon*, 467 Mich. 955; 656 N.W.2d 529 (2003),

and vacated the judgment of the Michigan Court of Appeals, *see People v. Cannon*, 468 Mich.

865; 659 N.W.2d 230 (2003). The supreme court then remanded the case to the court of appeals

for reconsideration in light of *People v. Hardiman*, 466 Mich. 417; 646 N.W.2d 158 (2002).[3]

On remand, the Michigan Court of Appeals affirmed all Petitioner's convictions. *See*

*People v. Cannon*, No. 232529, 2003 WL 21752819 (Mich. Ct. App. July 29, 2003). Petitioner

did not appeal that decision to the Michigan Supreme Court, nor pursue any other post-

--------

[3] Justice Marilyn Kelly voted to deny the State's application for leave to appeal.

3

*Cannon*, No. 04-CV-72447-DT

conviction remedies.  He signed and dated his habeas corpus petition on July 7, 2004.  The

grounds for relief read:

> I.  Petitioner Cannon was denied his right to a fair trial in state court
> when the evidence, even viewed in a light most favorable to the
> state prosecutor was insufficient to establish, beyond a reasonable
> doubt that he maintained a drug house at the North Fifth Address,
> possessed the cocaine, marijuana, and firearms seized from the
> North Fifth Street and Boxwood Houses.  U.S. Const, Ams V,
> XIV; *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781; 61 L. Ed.
> 2d  (1979).

> II.  The state trial court abused its discretion and denied Petitioner
> Cannon a fair trial when it over defense objections allowed the
> admissions of prejudicial rebuttal testimony that went far beyond
> the proper rebuttal including testimony that was not properly
> responsive to evidence introduced by Petitioner.  U.S. Const, Am
> XIV; *People v. Layher*, 464 Mich. 756, 762-765; 631 N.W.2d 281
> (2001), quoting *United States v. Abel*, 469 U.S. 45, 52; 105 S. Ct.
> 465; 83 L. Ed. 2d 450 (1984).

> III.  Petitioner Cannon is actually innocent for purposes of overcoming
> rigid enforcement of any state procedural rules.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the

*Cannon*, No. 04-CV-72447-DT

State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id*. at 411.

### III.  Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence produced at trial to support his

convictions.  According to him, he possessed neither drugs nor firearms, and there was no

evidence that he exercised dominion and control over the two houses.

The "Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship*, the critical inquiry on

review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it*

5

*Cannon*, No. 04-CV-72447-DT

> believes that the evidence at the trial established guilt beyond a reasonable
> doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added).  Instead,
> the relevant question is whether, after viewing the evidence in the light most
> favorable to the prosecution, *any* rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.  *See Johnson v.*
> *Louisiana*, 406 U.S. [356, 362 (1972)].  This familiar standard gives full play to
> the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to
> weigh the evidence, and to draw reasonable inferences from basic facts to
> ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in original).

*Jackson* "must be applied with explicit reference to the substantive elements of the criminal

offense as defined by state law."  *Id*. at 324 n.16.  "[C]ircumstantial evidence alone is sufficient

to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except

that of guilt.'"  *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States*

*v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

### A.  The North Fifth Street Cocaine and Conspiracy Convictions

Petitioner contends that the evidence was insufficient to support the North Fifth Street

cocaine and conspiracy convictions, because the police did not find him in the same room as the

drugs.  In addition, alleges Petitioner, his fingerprints were not found on the baggies containing

drugs and other people had access to the house and were present when the police raided it.

### 1.  Possession of Cocaine

The Michigan Court of Appeals summarized the law regarding possession with intent to

deliver less than 50 grams of cocaine as follows:

> The elements of unlawful possession with intent to deliver less than fifty
> grams of a controlled substance, M.C.L. § 333.7401(2)(a)(iv), are:  (1) that the
> recovered substance is cocaine, (2) that the cocaine is in a mixture weighing less
> than fifty grams, (3) that defendant was not authorized to possess the substance,

> and (4) that defendant knowingly possessed the cocaine with the intent to deliver.
> [*People v. Wolfe*, 440 Mich. 508, 516-17; 489 N.W.2d 748, *amended*, 441 Mich.
> 1201 (1992)]. Possession may be either actual or constructive, and may be either
> joint or exclusive. *Id.* at 520; [*People v. Konrad*, 449 Mich. 263, 271; 536 N.W.
> 2d 517 (1995)]. "The essential question is whether the defendant had dominion
> or control over the controlled substance." *Id.*, citing *People v. Germaine*, 234
> Mich. 623, 627; 208 N.W. 705 (1926). Mere presence in the proximity of drugs
> is insufficient to establish constructive possession, which may be found where the
> totality of the circumstances indicates a sufficient nexus between the defendant
> and the contraband to support an inference that the defendant exercised dominion
> or control over the substance. *People v. Johnson*, 466 Mich. 491, 500; 647
> N.W.2d 480 (2002); *Wolfe*, *supra* at 520-521. Circumstantial evidence and
> reasonable inferences drawn from it can be sufficient to establish possession.
> *People v. Fetterley*, 229 Mich. App. 511, 515; 583 N.W.2d 199 (1998).

*Cannon*, 2003 WL 21752819, at *3.

The court of appeals opined that a rational jury could "conclude that [Petitioner] was

sufficiently in possession and control of the North Fifth house on March 24, 1999, to actually or

constructively possess the cocaine found there." *Id.* at *4. In support of this conclusion, the

court of appeals noted that:

> [Jacqueline] Bowdery testified that she believed the North Fifth house belonged
> to [Petitioner], but he did not live there. She did not know where [Petitioner]
> lived; she would simply page him when she needed more cocaine. When
> [Petitioner] would bring her more cocaine to sell, Bowdery would give
> [Petitioner] the money she received from her cocaine sales. Bowdery's testimony
> alone, if believed, was sufficient to allow the jury to find that [Petitioner]
> possessed and intended to sell the cocaine. *People v. Heikkinen*, 250 Mich. App.
> 322, 327; 646 N.W.2d 190 (2002). Although [Petitioner] offers reasons to
> disregard Bowdery's testimony, his contentions address credibility and are not for
> this Court, or the trial judge to weigh. *Hardiman*, *supra* at 431; *Heikkinen*, *supra*.
> Furthermore, [Petitioner] was apprehended at the North Fifth house, possessed a
> utility bill for the house, and [Petitioner's] daughter testified that she had called
> him and asked him to go to the North Fifth house and get trespassers there to
> leave. If believed, this evidence provided grounds for a rational jury to infer that
> [Petitioner] exercised dominion and control over the premises and at least joint
> possession of the cocaine seized there. A police expert provided evidence
> regarding the weight and identity of the cocaine and testified that the substance

7

*Cannon*, No. 04-CV-72447-DT

> seized at the North Fifth house was cocaine and weighed less than fifty grams.
> Therefore, the jury's conclusion regarding possession with intent to deliver
> cocaine at the North Fifth house was adequately supported by evidence. *Wolfe,*
> *supra* at 515.

*Id*.

## 2. Conspiracy

The Michigan Court of Appeals explained the elements of conspiracy, Mich. Comp.

Laws § 333.7401(2)(a)(iv) as:

> (1) defendant possessed the specific intent to deliver the statutory minimum as
> charged, (2) his coconspirator possessed the specific intent to deliver the statutory
> minimum as charged, and (3) defendant and his coconspirator possessed the
> specific intent to combine to deliver the statutory minimum as charged to a third
> person. *People v. Hunter*, 466 Mich. 1, 6; 643 N.W.2d 218 (2002).

*Id.*

The court of appeals found that

> [Jacqueline] Bowdery's testimony that [Petitioner] had supplied her with crack
> cocaine to sell by bringing it to her at the North Fifth house almost daily for
> several months, combined with the proof of possession with intent to deliver, was
> sufficient to enable the jury to find [Petitioner] guilty of this offense. *Hardiman*,
> *supra* at 431; *Heikkinen*, *supra*.

*Id*.

## 3. Analysis

The state court's findings on the cocaine and conspiracy convictions are supported by the

record. *See, e.g.,* Tr. Dec. 13, 2000, at 188-89 (Detective Scott Bickel's testimony that a

Consumers' Energy bill for the second floor of 124 North Fifth Street was found in Petitioner's

pants pocket); Tr. Dec. 14, 2000, at 71-118 (Jacqueline Bowdery's testimony); Tr. Dec. 14,

2000, at 160-76 (Officer John Moton's testimony regarding cocaine enterprises); and Tr. Dec.

*Cannon*, No. 04-CV-72447-DT

15, 2000, at 241-44 (Dameka Woods' testimony regarding her efforts to get Petitioner to go to

the North Fifth Street house to evict trespassers).  Although Petitioner contends that Bowdery's

testimony was incompetent and, therefore, cannot support his convictions,

> [a] reviewing court does not reweigh the evidence or redetermine the credibility
> of the witnesses whose demeanor has been observed by the trial court.  *Marshall
> v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to
> weigh the probative value of the evidence and resolve any conflicts in testimony.
> *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the
> credibility of witnesses is generally beyond the scope of federal habeas review of
> sufficiency of evidence claims.  *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).
> The mere existence of sufficient evidence to convict therefore defeats a
> petitioner's claim.  *Ibid*.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

In conclusion, there was sufficient evidence to support the North Fifth Street cocaine and

conspiracy convictions.  The state court's conclusions did not result in a decision that was an

unreasonable determination of the facts or an unreasonable application of *Jackson*.

### B.  The Remaining Convictions

Petitioner also challenges the sufficiency of the evidence to support his convictions for

(1) maintaining a drug house at 124 North Fifth Street and (2) possessing drugs and firearms at

the Boxwood Street location.  Respondent argues that these claims are procedurally defaulted.

"Procedural default is not a jurisdictional bar to review on the merits."  *Howard v.

Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *petition for cert. filed*, (U.S. Oct. 4, 2005) (No. 05-

7004).  Courts may proceed directly to the merits of a petitioner's claims when the question of

procedural default presents a complicated question of law and is unnecessary to a disposition of

the case.  *Hudson v. Jones,* 351 F.3d 212, 216 (6th Cir.2003).  The ultimate issue to be decided

9

*Cannon*, No. 04-CV-72447-DT

here does not require relief.  Therefore, the Court will proceed to discuss the substantive merits

of Petitioner's claims.

### 1.  Maintaining a Drug House

To prove that Petitioner was guilty of maintaining a drug house, the prosecutor had to

show that Petitioner

> exercised authority or control over the property for purposes of making it
> available for keeping or selling proscribed drugs, and do so continuously for an
> appreciable period.  *Griffin, supra* at 32.  A person may be deemed to keep and
> maintain a drug house if that person has the ability to exercise control or
> management over the house.  *People v. Bartlett*, 231 Mich. App. 139, 152; 585
> N.W.2d 341 (1998).

*Cannon*, 2003 WL 21752819, at *6.  The Michigan Court of Appeals concluded that the

evidence was sufficient to support the conviction for maintaining a drug house because

there was evidence that Petitioner exercised control over the North Fifth Street house.

The state court's conclusion is supported by the record.  Jacqueline Bowdery testified

that she sold cocaine for Petitioner out of the upstairs apartment at 124 North Fifth Street.  She

would acquire the cocaine by paging Petitioner, who would respond by going to the North Fifth

Street house.  Bowdery claimed that Petitioner brought cocaine to the apartment almost every

day for a couple of weeks or months.  He cut up the cocaine and put it in baggies.  She would

give him the proceeds of her sales, and he gave her small quantities of cocaine as payment for

her efforts.  (Tr. Dec. 14, 2000, at 77-88.)

*Cannon*, No. 04-CV-72447-DT

### 2. Possession of Cocaine and Firearms

There also was sufficient evidence that Petitioner possessed the firearms and marijuana

found in the Boxwood Street house and the cocaine found in the detached Boxwood Street

garage. Although initially the Michigan Court of Appeals stated that the evidence was

insufficient to sustain these convictions, the court of appeals concluded differently on remand.

In summarizing the evidence on the drug charges, the court of appeals wrote:

> The evidence the prosecutor presented showed that [Petitioner] possessed a
> two-year-old Veterans Administration card bearing the Boxwood address, that
> there was a photograph of [Petitioner] and his girlfriend, Janice Coleman at the
> Boxwood house, and that in the Boxwood house was a utility bill for the North
> Fifth house in the name of Pete Woods. Although Coleman testified that she and
> [Petitioner] had not lived at the Boxwood address for two years, the credibility of
> her testimony was weakened because it was inconsistent with her testimony at the
> preliminary examination. Furthermore, the Boxwood house was furnished and
> Coleman was doing laundry there when the police arrived. Also, the police found
> an envelope addressed to [Petitioner] at the Boxwood address postmarked July 8,
> 1998 (eight months before the raid). The police search of the master bedroom at
> the Boxwood address disclosed a small quantity of marijuana, a rifle and a
> shotgun in a closet, $2,765 in a shaving kit, $190 lying on top of a television, and
> a nine millimeter handgun on top of the headboard of the bed. A cable television
> bill for the Boxwood address in [Petitioner's] name, and the energy bill for the
> North Fifth Street residence in the name of Pete Woods were both found on the
> kitchen table at the Boxwood home. Finally, the police testified they had
> observed [Petitioner] at the Boxwood residence on a number of occasions. That
> the handgun was tested for fingerprints, but none were found, and that none of the
> other physical evidence was tested for fingerprints, does not negate the reasonable
> inference from the other evidence that [Petitioner] was residing at the Boxwood
> residence.
>
> Moreover, there was other evidence from which the jury could reasonably
> infer [Petitioner's] connection to the contraband and cash found at the Boxwood
> residence. The prosecutor presented expert testimony that cocaine dealers often
> use two locations. This expert testimony when considered with Bowdery's
> testimony that [Petitioner] only provided her a daily sales inventory of cocaine
> and did not live at the North Fifth residence, and that she gave [Petitioner] the

11

*Cannon*, No. 04-CV-72447-DT

cash from her drug sales, would permit a rational jury to infer that [Petitioner] stored cocaine and drug profits at some other location, i.e. here, the Boxwood address. In that regard, the police found on Coleman's person when they searched her at the Boxwood residence a marked $20 bill used by the police in a "controlled buy" of cocaine at the North Fifth residence the day before the execution of the search warrants in this case. Further, numbers encoded in the pager that [Petitioner] possessed at the North Fifth residence matched numbers encoded into a pager that the police found at the Boxwood residence. Again, this evidence together with other evidence connecting [Petitioner] to the Boxwood residence, the large chunk of cocaine (41.72 grams or about 1 ½ ounces) found in the garage at the Boxwood location, and the substantial sum of cash in the bedroom, would permit a rational jury to infer that [Petitioner] was using the Boxwood residence to store his inventory of cocaine and drug profits.

*Cannon*, 2003 WL 21752819, at *4-5 (footnote omitted). The court of appeals concluded that, "when viewed as a whole and in a light favorable to the prosecution, . . . there was sufficient evidence . . . to support a rational jury's finding that [Petitioner] was guilty beyond a reasonable doubt as to all of the drug charges." *Id*. at *5.

As for the felony firearm conviction, the Michigan Court of Appeals stated:

Based on the evidence already discussed, a rational jury could also infer that [Petitioner] possessed the firearms at the Boxwood residence to protect his drugs and his drug profits stored at the Boxwood residence. To be guilty of felony-firearm, a defendant must carry or possess a firearm when committing or attempting to commit a felony. MCL 750.227b; *People v. Burgenmeyer*, 461 Mich. 431, 438; 606 N.W.2d 645 (2000). "A drug-possession offense can take place over an extended period, during which an offender is variously in proximity to the firearm and at a distance from it." *Id*. at 439. In *Burgenmeyer, supra*, the drugs and firearm were in close proximity to each other permitting a reasonable inference that the defendant possessed both at the same time. *Id*. at 440. However, the critical question is whether the firearm is accessible to the defendant at the time the drugs are possessed. *Id*. at 438. That is, it is not the proximity of the firearm to the drugs, but defendant's proximity to the firearm that is important: was the firearm accessible to defendant at the time he possessed the illicit drugs? Here, although the cocaine was found in a detached garage at the Boxwood address and the firearms were in the bedroom, the evidence permitted a rational jury to find [Petitioner] guilty of constructively possessing

12

the cocaine.  Further, the evidence permitted reasonable inferences that [Petitioner] resided at the Boxwood residence, kept his drug profits in the bedroom of the Boxwood residence, and had ready access to firearms in the bedroom at the same time he constructively possessed the cocaine in the garage.

*Id*.  The court of appeals found "the evidence was sufficient to allow a rational factfinder to conclude that [Petitioner] possessed both the firearms and the cocaine at the same time."  *Id.*

The state court's thorough review of the law and evidence did not result in an unreasonable determination of the facts or an unreasonable application of *Jackson*.  Therefore, Petitioner has no right to habeas relief on the basis of his challenge to the convictions for maintaining a drug house and possessing drugs and firearms at the Boxwood Street location.

## IV.  The Rebuttal Testimony

Petitioner alleges next that the trial court abused its discretion and deprived him of a fair trial when it permitted the prosecutor to admit prejudicial rebuttal testimony.  Petitioner contends that the testimony was improper because it tended to prove commission of the crime and because it did not respond to evidence that he introduced.  The Michigan Court of Appeals disagreed and concluded that the trial court did not abuse its discretion when admitting the challenged testimony.

"[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, [usually are not] questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the

*Cannon*, No. 04-CV-72447-DT

petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494

(6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, __ U.S. __, 125 S.

Ct. 168 (2004).

> The record indicates that, Petitioner
>
> called as a witness an admitted crack cocaine user who was present when
> [Petitioner] was arrested.  Her testimony was that she had not seen [Petitioner]
> with drugs the day of the police raid and had not seen [Petitioner] give drugs to
> [Jacqueline] Bowdery that day.  The prosecution then called a detective who
> testified on rebuttal that (1) [Petitioner's] witness had told him she had seen
> [Petitioner] with crack cocaine on multiple occasions, (2) she had seen
> [Petitioner] cutting cocaine at the North Fifth house on the night of his arrest, (3)
> that Bowdery had obtained her crack cocaine from [Petitioner], and (4) the
> witness had "taken a case," or accepted blame, in the past for something
> [Petitioner] had done.

*Cannon*, 2003 WL 21752819, at *6.  The court of appeals explained that,

> [t]he purpose of rebuttal evidence is to "contradict, repel, explain or disprove
> evidence produced by the other party and tending directly to weaken or impeach
> the same."  [*People v. Figgures*, 451 Mich. 390, 399; 547 N.W.2d 673 (1996)],
> quoting *People v. DeLano*, 318 Mich. 557, 570; 28 N.W.2d 909 (1947).

*Id*.  The court of appeals determined that

> [t]he first three items in the detective's testimony were proper rebuttal testimony
> because they directly contradicted the testimony of [Petitioner's] witness
> regarding [Petitioner's] possession of cocaine. [*People v. Vasher*, 449 Mich. 494,
> 504; 537 N.W.2d 168 (1995)].  The last item was also proper rebuttal because it
> addressed the witness' potential bias in favor of [Petitioner].  [*People v. Layher*,
> 464 Mich. 756, 765; 631 N.W.2d 281 (2001); *People v. Rosen*, 136 Mich. App.
> 745, 758-59; 358 N.W.2d 584 (1984)].

*Id.*  Admission of the officer's rebuttal testimony was not fundamentally unfair for the reasons

given by the state court.  Therefore, Petitioner has no right to habeas relief on the basis of his

14

*Cannon*, No. 04-CV-72447-DT

second claim.

## V.  Actual Innocence

Petitioner's third and final claim alleges that Petitioner is actually innocent for purposes of overcoming any state procedural defaults.  The Court has not held that Petitioner's claims are procedurally defaulted.  Moreover, "[t]o be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "[T]he petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Id*. at 327.  Petitioner has not produced any new evidence of actual innocence.  Consequently, the assertion that he is actually innocent does not merit granting the writ of habeas corpus.

## VI.  Conclusion

For all the reasons given above, Petitioner is not entitled to habeas corpus relief.  Therefore, his application for the writ of habeas corpus is DENIED.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  December 28, 2005


copies mailed to:      **Pete Cannon** 196292
Saginaw Correctional Facility
9625 Pierce Road
Freeland, MI 48623

15

*Cannon*, No. 04-CV-72447-DT

**Brenda E. Turner**
Assistant Attorney General
Habeas Corpus Division
P.O. Box 30217
Lansing, MI 48913